UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 23-CR-30002-SEM-KLM |
| | ) | |
| JOHNNELL SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

KAREN L. McNAUGHT, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on the Motion to Suppress Evidence field by defendant, Johnnell Smith [Doc. 38]. For the reasons as set forth herein, this Court recommends the motion should be granted as to the search of defendant and his vehicle, as well as the statement he uttered after he was detained on November 30, 2022. The Court recommends that motion to suppress the search incident to the warrant issued by Judge Raylene Grischow on November 30, 2022, be denied.

**BACKGROUND**

On November 15, 2022, Russell Lehr, a Springfield Police Officer who was assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO), took renewed interest in the defendant, who had recently been released from the Bureau of Prisons [Doc. 41-1, pp. 3-4].[1] Defendant had previously been

---

[1]The Court references the exhibit attached to the Government's response [Doc. 41-1], rather than defendant's motion. The Government's exhibit contains a copy of the search warrant, the complaint for a search warrant, and the affidavit of Agent Lehr in support of the application

sentenced to 120 months of imprisonment in the Bureau of Prisons in the case
entitled USA v. Smith (C.D. Ill. 15-30039) [15-30039 Doc. 56], but was released
with conditions on or about July 7, 2020, after the Court considered defendant's
request for compassionate release [15-30039 Docs. 81, 89].

According to the sworn statement of TFO Lehr, he and other task force
officers established surveillance on November 15, 2022; November 16, 2022;
November 17, 2022; and November 20, 2022, at the house in which defendant
lived [Doc. 41-1, pp. 3-5].   On November 15, 2022, defendant was observed
leaving his residence and traveling to a house where he stayed approximately 3
minutes [Doc. 41-1, p. 4].   Agent Lehr, based upon his training and experience,
believed this conduct was indicative of a narcotics transaction, even though no
hand-to hand transaction was observed [Doc. 41-1, p. 4].   According to the
affidavit, one of the residents of this house had been the subject of a heroine
overdose in March 2021.   A few minutes later, defendant went to an apartment
complex and was observed by a Task Force Officer to have a meeting in
defendant's car for approximately one-to-two minutes with another individual
[Doc. 41-1, p 4].   Based upon this conduct, defendant's previous heroin sales,
and the experience of the Task Force Officers, Agent Lehr opined defendant had
engaged in another narcotics transaction [Doc. 41-1, p. 4].

On November 16 and 17, 2022, Task Force Officers conducted surveillance
on the defendant's residence and saw another male, not the defendant, exit the

---

for a search warrant.  Defendant's exhibit [Doc. 38-1] contains only the affidavit of Agent Lehr in
support of the application for a search warrant.

residence [Doc. 41-1, pp. 4-5].  The male was followed, and officers observed him engage in a hand-to-hand transaction with persons in a Jeep, which they believed involved the sale of narcotics [Doc. 41-1, pp. 4-5].  On November 20, 2022, Task Force Officers again were surveilling defendant's residence when they observed the other male (not defendant) leave the residence and engage in a hand-to-hand transaction with the occupants of the same Jeep [Doc. 41-1, p. 5]. After a minor traffic violation, a police officer stopped the driver of the Jeep and a small amount of heroin was located [Doc. 41-1, p. 5].  Based upon these facts, Agent Lehr believed defendant and the other male were selling heroin, and illicit drugs and drug paraphernalia, weapons, currency, and documents associated with unlawful drug activity would be found in defendant's residence [Doc. 41-1, p. 6].

In applying for the search warrant of defendant's residence, Agent Lehr stated he had been a police officer for more than 18 years, he had received specialized training in various aspects of narcotics investigations which included interviewing, surveillance techniques, and money laundering [Doc. 41-1, p. 3]. Agent Lehr also stated he had conducted or assisted in numerous narcotics investigations, executed search warrants, testified in criminal trials, and was familiar with the methods used in narcotics trafficking operations and trafficking patterns [Doc. 41-1, p. 3].  Based upon this information, on November 30, 2022, Circuit Judge Raylene Grischow, who regularly presides over cases in Sangamon County, Illinois, signed the complaint and a warrant to search the house in which defendant resided [[Doc. 41-1, pp. 1-2].

According to the motion to suppress [Doc. 38], the search warrant was executed on defendant's residence on November 30, 2022, and various items of evidentiary value were seized. Neither of the parties submitted an inventory of the items found in defendant's house. However, on December 2, 2022, a complaint was filed in this Court charging defendant with possession with intent to distribute a controlled substance in violation of 21 U.S.C. §841(a)(1) and possession of a firearm during and in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c)(a) [Doc. 1]. On January 4, 2023, defendant was indicted by a Grand Jury for possession of 100 grams or more of heroin with intent to distribute in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B); possession of 500 grams or more of cocaine with intent to distribute in violation of §§841(a)(1), 841(b)(1)(B); possession of a firearm during and in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c)(A)(i); and unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g)(1).

The motion to suppress and the Government's response also indicate defendant left the residence and drove away prior to the execution of the search warrant, so police officers detained defendant [Doc. 38, 41]. Neither party provides any explanation to the Court of where defendant was stopped in relation to his house. However, the Government relates that it took police officers 8 minutes from the time defendant was stopped until they advised him about the search warrant for his residence [Doc. 41]. Although the Government states defendant was placed in the back seat of a squad car and was initially uncuffed, he was told he would be taken to the police station [Doc. 41]. There is no

indication defendant was free to leave the squad car, for if he were in the back seat, there was most likely no way for him to get out of the official vehicle, since the back seats of police cars rarely have handles on the inside.  Nevertheless, defendant was eventually handcuffed 18 minutes after he was stopped and driven to the Springfield Police Department station ten minutes later [Doc. 41]. In the motion to suppress, defendant cites to two pages of a document that this Court assumes is a report of the traffic stop, but these documents (Bates ##12-13) were not provided as exhibits to the motion and are not before the Court.[2]

Police searched defendant's house and within 7 minutes found illicit drugs [Doc. 41].  Within 54 minutes of commencing the search, officers seized more guns, drugs, and other evidence [Doc. 41].  Approximately 50 minutes after the search of the house was completed, defendant waived his *Miranda* rights [Doc. 41].

Defendant contends the warrant to search his house was facially deficient; there was an insufficient showing of probable cause to believe contraband would be found inside the residence; there is insufficient probable cause to believe defendant was involved in drug trafficking; officers were not authorized to search, detain, or seize his person or his vehicle [Doc. 38].  The Government contends the affidavit in support of the complaint and search warrant did establish probable cause; if there was not sufficient probable cause established

---

[2]On March 21, 2024, the Court attempted to set an evidentiary hearing on the motion to suppress.  The parties indicated the matter was fully briefed, the Court should consider the information provided in the briefs, and the parties did not request an evidentiary hearing.  As such, this Court considers only the information in the briefs on the motion to suppress, as well as the pleadings filed in this proceeding.

in the affidavit, the good-faith exception should apply to allow the evidence seized to be used at trial; the detention of defendant when he left his residence in a car was nothing more than a *Terry* stop and was therefore appropriate; and any statements defendant made after his arrest would have been obtained at a later time [Doc. 41].

## ANALYSIS

### I.     The Warrant For the Search of Defendant's Home

**Issuance of the Warrant by the Circuit Court Judge**

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. CONST. amend. IV. The requirement that officers obtain a warrant from a neutral, detached magistrate ensures individuals receive Fourth Amendment protection. *United States v. Whitaker,* 546 F.3d 902, 906 (7th Cir.2008).  Where the facts described in a search warrant application create a reasonable inference of unlawful activity, the Fourth Amendment requirement of probable cause is satisfied.  *United States v. Miles*, 86 F.4th 734, 741 (7th Cir. 2023).

"[P]robable cause does not require direct evidence linking a crime to a particular place." *United States v. Yarber*, 915 F.3d 1103, 1105 (7th Cir. 2019). The concept of probable cause is a fluid and turns on the assessment of probabilities.  *Illinois v. Gates*, 462 U.S. 213, 232 (7th Cir. 1983); *see also United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006)("Probable cause requires only a probability or substantial chance that evidence may be found....") "Probable cause is established when, based on the totality of the circumstances,

the affidavit [considered by the judge] sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006). Because probable cause is based upon a totality of the circumstances, if there is a deficiency in one factor, it may be compensated by some other indicia of reliability. *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014). "[N]o one factor necessarily dooms a search warrant." *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011).

Police officers are "entitled to reasonably rely upon their special knowledge and expertise and expertise to assess probabilities and draw inferences." *United States v. Marin*, 761 F.2d 426, 432 (7th Cir. 1985). A judge who evaluates an application for a search is entitled to take the experience of the police officer into account when determining whether there is probable cause to issue a warrant. *United States v. Lamon*, 930 F.2d 1183, 1189 (7th Cir. 1991). Where the officer indicates he has extensive experience, even where the statements are conclusory, and affirms he has a high degree of confidence that the sought-after evidence is very likely to be in its purported location, the issuing judge is entitled to give the statements made the officer credit. *United States v. Orozco*, 576 F.3d 745, 750 (7th Cir. 2009). "[O]bservations of conduct consistent with drug trafficking, even though apparently innocuous, can give rise to probable cause." *United States v. McNeal*, 82 F. Supp.2d 945, 955 (S.D. Ind. 2000), *citing United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995).

In this case, Agent Lehr presented a complaint and affidavit in support of a search warrant to a Circuit Court Judge in Sangamon County, Illinois. The affidavit indicated Agent Lehr's belief of on-going continuous criminal activity in addition to providing an explanation of how he knew defendant. Agent Lehr made statements that he had experience as a law enforcement officer; training as a Special Agent in narcotics investigations and surveillance techniques; and was knowledgeable in methods and modes of narcotics operations.

A judge "is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit us likely to be kept, taking into account the nature of the evidence and the offense." *United States v. Singleton*, 125 F.3d 1097, 1102 (7th Cir. 1997). In a drug-related case, a reasonable inference can be made that drug dealing is likely to be found where the dealer lives. *United States v. Scott*, 731 F.3d 659, 665 (7th Cir. 2013).

The decision of the judge who issued the warrant is entitled to great deference. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *United States v. Scott*, 901 F.3d 842, 844 (7h Cir. 2018). Where an affidavit in support of a search warrant provides a substantial basis for the judge to conclude the requested search has a fair probability of uncovering evidence, it is not error to issue the warrant. *United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020).

The information containing Officer Lehr's prior experience with defendant, in conjunction with contemporary surveillance and Lehr's training and experience, could provide the Circuit Court Judge with a sufficient information to establish probable cause to believe there was on-going drug activity in the

house where defendant stated he resided.  Because of the deference to be accorded the judge who issued the warrant, this Court cannot find the application was so lacking in detail that evidence found at the house in which defendant resided should be suppressed.

## **The Good-Faith Exception**

Even if a search warrant lacks a basis in probable cause, "exclusion is not appropriate where 'the police act with an objectively reasonable good-faith belief that their conduct is lawful.'" *United States v. Kienast*, 907 F.3d 522, 527 (7th Cir. 2018).  *See also United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020).  In the context of a civil suit arising from an arrest, the Supreme Court noted, "It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable." *Malley v. Briggs,* 475 U.S. 335, 346 n. 9 (1986).

Under the good faith exception, the fruits of a search based on an invalid warrant may be admitted at trial if the executing officer relied on the invalid warrant in good faith. *United States v. Leon*, 468 U.S. 897, 922 (1984); *see also United States v. Kienast*, 907 F.3d 522, 527 (7th Cir. 2018) ("[E]xclusion is not appropriate where the police act with an objectively reasonable good-faith belief that their conduct is lawful."). In *Leon*, the Supreme Court explained that where "law enforcement officers have acted in objective good faith or their transgressions have been minor" the costs of the suppression on society and the

judicial system compared to the magnitude of the benefit conferred on guilty defendants "offends basic concepts of the criminal justice system." *Leon,* 468 U.S. at 908 (1984).  Thus, the Court must determine whether the good faith exception to the exclusionary rules applies.

A police officer's decision to obtain a warrant is treated as *prima facie* evidence that the officer was acting in good faith.  *Leon*, 468 U.S at 922; *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005).  A defendant can rebut the *prima facie* evidence of good faith by showing: (1) the affiant misled the magistrate with information the affiant knew was false or would have known was false but for the affiant's reckless disregard for the truth; (2) the magistrate wholly abandoned the judicial role and instead acted as an adjunct law-enforcement officer; (3) the affidavit was bare boned, "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant was so facially deficient in particularizing its scope that the officers could not reasonably presume it was valid,.  *United States v. Glover*, 755 F.3d 811, 818-19 (7th Cir. 2014), *citing Leon*, 468 U.S. at 923.  *See also United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020).

In this case, there is *prima facie* evidence Agent Lehr acted in good faith to obtain the search warrant for defendant's house.  Therefore, the burden shifts to defendant to rebut the *prima facie* evidence of good faith. There does not appear to be any argument in defendant's motion that (a) Agent Lehr misled the Sangamon County Circuit Judge with a reckless or knowing disregard for the truth; (b) the Sangamon County Circuit Judge abandoned her judicial role or

was acting in as an adjunct law-enforcement officer; or (c) the description in the complaint was so facially deficient in failing to describe the premises with particularity that the warrant could not be reasonably presumed to be valid. Rather, the argument appears to be that the complaint supporting the search warrant was "bare bones" or "so lacking in indicia of probable cause" that belief in the existence of probable cause is unreasonable.

In determining whether Agent Lehr could have relied in objective good faith on the decision of the Circuit Court judge to issue a search warrant, the Court must determine whether Agent Lehr could have reasonably believed the materials presented to the judge were sufficient to establish probable cause. *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002). This analysis is similar to a qualified immunity analysis. *Id.* Police officers are presumed to have knowledge of "well-established legal principles as well as an ability to apply the facts of a particular situation to these principles." *Id.* Thus, evidence is excluded where courts have held a materially similar affidavit previously failed to establish probable cause under identical facts or the affidavit is so plainly deficient that any reasonably well-trained officer would have known it failed to establish probable cause and he should not have applied for the warrant. *Id.*

Agent Lehr reasonably believed defendant not only lived at the residence to be searched, but also that illicit drugs and distribution paraphernalia would be found at the house. Agent Lehr knew that plaintiff had a history of involvement with drug activity. Agent Lehr also indicated, based upon his training and experience as well as the surveillance of defendant and another

individual egressing the premises that the sale of illicit drugs was being conducted. Moreover, it was logical to conclude drugs would be stored in the house where two individuals first left, then were involved in short visits and/or hand-to-hand transactions. Because Agent Lehr relied in good faith on the warrant in searching defendant's house, the good faith exception to the exclusionary rule applies in this instance. Accordingly, this Court recommends the Motion to Suppress be denied.

## Staleness of Information

Defendant also has made an argument that the warrant application was premised upon stale information. This Court finds the information presented to the Sangamon County Circuit Court Judge, in conjunction with the information about on-going activity, was sufficient to establish a basis for the issuance of the warrant.

The staleness of an affidavit is determined on a case-by-case basis. *United States v. Newsom*, 402 F.3d 780 (7th Cir. 2005). "Assessing the staleness of information in a complaint is never a mechanical process." *Edmond v. United States* , 899 F.3d 446, 455 (7th Cir. 2018). The age of the information alleged to be stale must be considered in conjunction with the age of the rest of the information in the affidavit and the circumstances of the offense. *Edmond v. United States*, 899 F.3d 446 (7th Cir. 2018). "The age of information contained in an affidavit is only one factor a judge considers, and it is less important when the criminal activity in question is apparently continuous." *United States v. Watzman*, 486 F.3d 1004, 1008 (7th Cir. 2007) If a complaint indicates "ongoing,

continuous criminal activity, the passage of time becomes less critical.  *United States v. Lamon,*930 F.2d 1183, 1188 (7th Cir. 1991).

In this case, Agent Lehr attested he was familiar with defendant and his illicit drug activities eight years before the warrant was issued.  This established a basis that Agent Lehr recognized defendant and was also one factor that the Court could utilize in determining the existence of probable cause.  Agent Lehr and other police officers surveilled defendant and another individual for several days, which resulted in officers observing short interactions that, in their experiences, resembled illicit drug transactions.  Officers verified one of the interactions resulted in locating an amount of heroin consistent with personal use.  The identification of the defendant and the fact someone had previously overdosed at a residence visited by defendant was not so stale as to warrant suppression of the evidence found at defendant's premises, given the recency of the events central to a finding of probable cause.  Furthermore, Agent Lehr's affidavit informed the Court that defendant had been found in possession of a large amount of heroin after an investigation that occurred in 2014 and the heroin overdose occurred during March 2021.  The Court, in issuing the warrant was able to consider when these events occurred and give the evidence the weight it deserved.

## II.    The Detention of Plaintiff and Search of His Vehicle

Defendant contends that he was unlawfully detained when he was stopped and taken into custody after he had left his residence.  Defendant asks the Court to suppress (a) statements made after defendant was stopped and (b) evidence

seized during plaintiff's stop and detention.    The Government contends
defendant was lawfully seized as an investigative stop, although the Government
admits the stop ripened into an arrest prior to the interrogation of defendant.

The Fourth Amendment protects "[t]he right of the people to be secure in
their persons ... against unreasonable ... seizures." *Manuel v. City of Joliet*, 580
U.S. 357, 364 (2017), *citing* U.S. Const, amend IV.    "[T]he general rule [is] that
Fourth Amendment seizures are 'reasonable' only if based on probable cause to
believe that the individual has committed a crime." *Bailey v. United States,* 568
U.S. 186, 192 (2013).    "A person is seized" whenever officials "restrain[ ] his
freedom of movement" such that he is "not free to leave." *Brendlin v. California,*
551 U.S. 249, 254 (2007).

In *Terry v. Ohio*, the Supreme Court noted not all interactions between
policemen and citizens require probable cause, and police officers can stop and
detain individuals for certain investigative purposes. *Terry v. Ohio*, 392 U.S. 1,
19 n. 16 (1968).  Although the officer does not need probable cause to conduct
an investigatory stop, the brief detention must be based on reasonable suspicion
that the stopped individual has or is about to commit a crime. *United States v.
LePage,* 477 F.3d 485, 487–88 (7th Cir. 2007). When an officer initiates a *Terry*
stop, he must be able to point to "specific and articulable facts" that suggest
criminal activity.  *Jewett v. Anders,* 521 F.3d 818, 823 (7th Cir.2008); *United
States v. Lawshea,* 461 F.3d 857, 859 (7th Cir. 2006).   While reasonable
suspicion requires less than probable cause, it requires more than a mere
hunch. *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011).

*Terry* authorizes brief investigatory stops based on reasonable suspicion of criminal activity. *Mwangangi v. Nielsen*, 45 F.4th 816, 824 (7th Cir. 2022). These short detentions give officers a chance to verify or dispel well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity. *Id.*

An officer conducting a *Terry* stop may pat down a suspect to search for weapons, but only if "specific and articulable facts" support a suspicion that the suspect is armed and presents a danger to officers or to others. *United States v. Shoals*, 478 F.3d 850, 853 (7th Cir. 2007). Reasonable suspicion must be evaluated in the totality of the circumstances. *United States v. Hicks,* 531 F.3d 555, 558 (7th Cir.2008).

Under the totality of the circumstances, there is no evidence on the present record that Springfield Police Department officers had reasonable suspicion to stop defendant in his car. *See Hicks,* 531 F.3d at 558 (determining "reasonable suspicion is an objective inquiry based on the totality of the circumstances known to the officer at the time of the encounter"). Defendant provided the Court with no information about the stop of his vehicle; where (in relation to his house) the stop occurred; his interaction with police officers during the stop; whether he was questioned and voluntarily responded; whether he gave consent for the search of his car; whether he felt free to leave when he was placed in the squad car; what statements he may have made in relation to when he was given *Miranda* warnings; or any other information that may have been available in the police reports, despite referencing Bates ##12-13. The Government's response

provided a bullet-point timeline, which was also deficient in details. However, from the information supplied to the Court, it appears officers obtained the warrant and were in the process of marshaling their resources to execute the warrant when they observed defendant leave his home. Defendant was stopped in his vehicle 36 minutes before the initiation of the search of plaintiff's residence. The warrant issued by the Sangamon County Judge did not include a search of defendant or his car. There is no indication in the record that any officer believed defendant was a threat to his or her safety or any officer had reasonable suspicion defendant had or was about to commit a crime. Taking the circumstances before this Court in their totality, this Court cannot find the stop of defendant in his vehicle, subsequent search, and elicitation of statements from defendant was reasonable.

The stop of defendant appears to have been neither brief, nor done for investigatory purposes. There is nothing in the record to suggest the stop was for purposes of conducting a brief investigation. The Government has advanced no investigatory purpose for the stop.

As an alternative to the theory plaintiff was detained during an investigatory *Terry* stop, the Government contends defendant was lawfully detained during the execution of the search warrant, as authorized by *Michigan v. Summers*, 452 U.S. 692 (1981). The rule of *Summers*, authorizing detentions during execution of search warrants, is limited to detentions in the immediate vicinity of the premises to be searched. *Bailey v. United States*, 568 U.S. 186 (2013). The Government does not disclose where defendant was detained, other

than that it occurred at a location other than the residence.  Defendant was not returned to the residence during the search.  Instead, he was taken to the police station.  *Summers* did not authorize the type of detention as occurred in this case.

The Government contends evidence seized from plaintiff's vehicle "to the extent there was any" should not be suppressed because it would have inevitably been discovered.  The Government bears the burden of demonstrating the evidence would have been inevitably discovered, even if defendant had not been unlawfully detained.  The Government does not explain what was seized, when it was seized, whether it was seized from defendant's person or vehicle, or any of the other circumstances of seizure.  There is nothing from which the Court could possibly conclude the evidence would have been on defendant's person or vehicle (to the extent a later search of the vehicle was inevitable) at the time of a later, lawful, arrest of defendant.  The Government has not met its burden on a claim of inevitable discovery.

The Government also asserts that the inevitable discovery theory applies to statements obtained from defendant after his detention.  The Government cites no authority for application of inevitable discovery principles to the admissibility of confessions, and the Court is aware of none.  Even if the theory was viable, the Government's cursory argument on this point gives the Court no basis to determine defendant would have made the same statements, if the Government had not wrongfully detained him.

The Government also argues probable cause for arrest existed by the time defendant finally made incriminating statements. The Government has cited no authority and has offered no analysis to allow the Court to find the taint of a wrongful seizure was sufficiently removed for any statements made by defendant to be admissible.

FOR THESE REASONS, this Court recommends suppressing the detention of defendant, the search of his vehicle, and any statements made by defendant after he was stopped in his car on November 30, 2022. The Court recommends the motion to suppress be denied as to the evidence found in the house pursuant to the issuance of the search warrant.

The parties are advised any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen days after service of a copy of this Report and Recommendation. *See* 28 U.S.C. §636(b)(1); Red. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. *See* possession of a firearm during and in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c)(a) Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). *See* CDIL-LR 72.2.

ENTERED: April 4, 2024


    /s/Karen L. McNaught
    Karen L. McNaught
    United States Magistrate Judge