**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 23-30002** |
| ) | |
| **JOHNELL SMITH,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge:**

This matter comes before the Court on the Report and
Recommendation of United States Magistrate Judge Karen
McNaught (d/e 44) on Defendant Johnnell Smith's Motion to
Suppress (d/e 38).  Defendant and the Government have timely
filed Objections to the Report and Recommendation.  d/e 45, 46.

A district judge reviews de novo any part of a magistrate
judge's report and recommendation to which a specific written
objection has been made.  Fed. R. Crim. P. 59(b); 28 U.S.C.
§ 636(b)(1).  The Court has thoroughly reviewed Magistrate Judge
McNaught's Report and Recommendation and the parties'
objections to the Report and Recommendation.  For the reasons set

forth below, the Court OVERRULES Defendant's objections (d/e 45), SUSTAINS the Government's objections (d/e 46), ACCEPTS and ADOPTS the Magistrate Judge's Report and Recommendation in part and REJECTS it in part (d/e 44), and DENIES Defendant's Motion to Suppress (d/e 38).

## I. BACKGROUND

On December 2, 2022, a Criminal Complaint was filed in this Court, followed by an Indictment on January 4, 2023. See d/e 1, 13. A grand jury charged Defendant with: (1) possession of 100 grams or more of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) possession of 500 grams or more of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (3) possession of a firearm during and in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (4) unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). See d/e 1. The Indictment also contained a forfeiture allegation pursuant to 18 U.S.C. § 924(d). Id.

On December 29, 2023, the Defendant filed a Motion to Suppress. See d/e 38. Defendant seeks to suppress evidence

seized during a search of his residence on November 30, 2022, as well as statements made by him on November 30, 2022.  See id.

On February 12, 2024, the Government filed its response.  d/e 41.  On March 5, 2024, Defendant filed his reply.  d/e 42.  No evidentiary hearing was held on Defendant's Motion to Suppress, despite the Magistrate's attempt to do so on March 21, 2024.  See Minute Entry entered on March 21, 2024.  On April 4, 2024, Magistrate Judge McNaught made a Report and Recommendation, in which she recommended the Court grant Defendant's Motion to Suppress in part and deny it in part.  d/e 44.  Specifically, Judge McNaught recommended the Court suppress the detention of Defendant, the search of his vehicle, and any statements made by Defendant after he was stopped in his car on November 30, 222.  Id. at p. 18.  Judge McNaught recommended Defendant's Motion to Suppress be denied as to the evidence found in the house pursuant to the issuance of the search warrant.  Id.  Defendant and the Government filed timely objections to the Report and Recommendation.  d/e 45, 46.

## II. FACTS

Defendant had previously been sentenced to 120 months' imprisonment for aiding and abetting the possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) in United States v. Smith, Central District of Illinois Case No. 15-30039.  Defendant was released with supervised release conditions on or about July 7, 2020, after the Court granted Defendant's request for compassionate release.  Case No. 15-30039, d/e 81, 89.

On November 15, 2022, Russell Lehr, a Springfield Police Officer assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO), took renewed interest in Defendant after Defendant's release from the Bureau of Prisons.  d/e 41, Ex. 1, pp. 3–4.  TFO Lehr was familiar with Defendant from a 2014 narcotics investigation where Defendant was found in possession of a large amount of heroin.  Id. at p. 4.

According to TFO Lehr's affidavit, TFO Lehr and other task force officers surveilled Defendant's listed residence at 1210 N. Bengel Street on November 15, 2022; November 16, 2022; November 17, 2022; and November 20, 2022.  d/e 41, Ex. 1, pp. 3–5.  On November 15, 2022, TFO Lehr and other officers observed

Defendant exit the Bengel Street residence, travel to another home on Montgomery Lane, and park in the driveway of said home for approximately two to three minutes before leaving the neighborhood.  Id. at p. 4.  The home was the residence of an individual who had previously overdosed on heroin.  Id.  TFO Lehr, based upon his training and experience, believed this conduct was indicative of a narcotics transaction.  Id.

The officers continued to surveil Defendant as he went to an apartment complex at 2210 E. Cook Street.  An officer observed an unknown black male exit the apartment, get into the passenger side of Defendant's vehicle, and remain in the vehicle for approximately one to two minutes before returning to the apartment complex.  Id.  Based upon this conduct, Defendant's previous heroin sales, and the experience of the officers, the officers believed Defendant was engaging in narcotics transactions.  Id.

On November 16, 2022, TFO Lehr and other officers again surveilled 1210 N. Bengel Street.  Id.  The officers observed an unknown black male leaving the driveway of the house in a gold Oldsmobile Coupe, headed westbound on North Grand Avenue.  Id.  The vehicle pulled over to the north side of the intersection of

Reservoir Avenue and North 9th Street.  Id.  TFO Lehr observed an unknown white male exit the passenger seat of a Jeep Compass, which had been parked in the same area.  Id.  The white male walked to the passenger side of the Oldsmobile, where TFO Lehr observed a hand-to-hand transaction.  Id.

On November 17, 2022, TFO Lehr observed the same unknown black male who had been driving the gold Oldsmobile the day before leave 1210 N. Bengel Street and drive to the same intersection, where TFO Lehr observed the black male make a hand-to-hand transaction with the occupants of the same Jeep Compass.  Id. at p. 5.

On November 20, 2022, TFO Lehr and other officers again surveilled 1210 N. Bengel Street.  Id.  Springfield Police Officer Sgt. Wangard observed the unknown black male exit 1210 N. Bengel Street and get into the gold Oldsmobile.  Id.  Suspecting the unknown black male would again meet with the white male in the Jeep Compass, Sgt. Wangard parked in the area of 9th Street and North Grand Avenue.  Id.  TFO Lehr observed a hand-to-hand transaction occur between the black male and an occupant of the Jeep Compass.  Id.  Surveillance units followed the Jeep Compass

until Springfield Police Officer T. Sullivan conducted a traffic stop of the Jeep Compass and located a small amount of heroin.  Id. at pp. 5–6.  Based upon these facts, TFO Lehr believed Defendant and the unknown black male were selling heroin, and illicit drugs and drug paraphernalia, weapons, currency, and documents associated with unlawful drug activity would be found at 1210 N. Bengel Street.  Id. at p. 6.

In applying for the search warrant of 1210 N. Bengel Street, TFO Lehr stated he had been a police officer for more than 18 years, and he had received specialized training in various aspects of narcotics investigations, including interviewing and surveillance techniques.  Id. at p. 3.  TFO Lehr also stated he had conducted or assisted in numerous narcotics investigations, executed search warrants, testified in criminal trials, and was familiar with the methods used in narcotics trafficking operations and trafficking patterns.  Id.  Based upon this information, on November 30, 2022, Circuit Judge Raylene Grischow, in Sangamon County, Illinois, signed the complaint and a warrant to search 1210 N. Bengel Street.  Id. at pp. 1–2.

Officers executed the search warrant on 1210 N. Bengel Street on November 30, 2022, and seized various items of evidentiary value.  d/e 38, 41.  While preparing to serve the search warrant on the residence, officers observed Defendant leave the residence in a vehicle.  d/e 41, p. 3.  Officers stopped Defendant's vehicle at approximately 12:27 P.M.  Id.  At 12:35 P.M., the officers advised Defendant about the search warrant.  Id.  At 12:37 P.M., the officers placed Defendant in the back seat of a squad car, uncuffed, and informed him that he was not under arrest but was being detained as part of the investigation.  Id.  The officers also told Defendant that he was being taken to the Springfield Police Department station.  Id.  At 12:44 P.M., the officers handcuffed Defendant.  Id.  At 12:55 P.M., officers conducted an interview with Defendant, uncuffed.  Id.  At 1:03 P.M., officers began searching the residence.  Id.  From 1:10 to 1:57 P.M., officers seized 10 grams of crack cocaine, drugs, guns, and additional evidence from the residence.  Id. at pp. 3–4.  At 2:08 P.M., officers finished searching the residence.  Id. at p. 4.  At 2:52 P.M., Defendant waived his Miranda rights and agreed to an interview.  Id.

### III. ANALYSIS

A district judge reviews de novo those portions of the Report and Recommendation to which timely objections have been made. Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1).  The district judge may "accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate with instructions."  Fed. R. Crim. P. 59(b)(3).  If only some portions of the Report and Recommendation are objected to, the district judge reviews those unobjected portions for clear error.  Johnson v. Zema Sys. Corp., 170 F.3d 734, 739 (7th Cir. 1999).  Having reviewed the hearing transcript, the Report and Recommendation, the parties' motions and memoranda, and the applicable law, the Court finds no clear error in the unobjected portions of Judge McNaught's Report and Recommendation.  The Court reviews the objected portions de novo below.

**A. The Search Warrant Was Supported by Probable Cause.**

Reviewing courts give great deference to an issuing judge's determination of probable cause and should "uphold that determination so long as there is a 'substantial basis' for concluding 'that a search would uncover evidence of wrongdoing.'" United States v. Yarber, 915 F.3d 1103, 1105 (7th Cir. 2019) (citing Illinois

v. Gates, 462 U.S. 213, 236 (1983)).  "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime."  United States v. Searcy, 664 F.3d 1119, 1122 (7th Cir. 2011).

The validity of a warrant rests solely on the strength of the affidavit when an affidavit is the only evidence presented to a judge in support of a search warrant.  United States v. Peck, 317 F.3d 754, 755 (7th Cir. 2003).  The issuing judge is tasked with making a commonsense decision, based on all the circumstances, that there is "a fair probability that contraband or evidence of a crime will be found in a particular place."  United State v. Curry, 538 F.3d 718, 729 (7th Cir. 2008).

Defendant argues that the affidavit supporting the warrant lacked probable cause as it did not establish a nexus between Defendant and 1210 N. Bengel Street to support a finding that drug dealing occurred at this house.  Magistrate Judge McNaught found that the affidavit established probable cause and did in fact establish a nexus between Defendant and 1210 N. Bengel Street. The Court agrees with Magistrate Judge McNaught's determination.

Establishing probable cause "does not require direct evidence linking a crime to a particular place." United States v. Zamudio, 909 F.3d 172, 175 (7th Cir. 2018) (quoting United States v. Anderson, 450 F.3d 294, 303 (7th Cir. 2006)). An issuing court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.  United States v. Lamon, 930 F.2d 1183, 1188 (7th Cir. 1991) (quoting United States v. Angulo–Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986)).

In Defendant's objection, he argues that the Report and Recommendation incorrectly found that the warrant was supported by probable cause because the supporting affidavit has no nexus between the residence and Defendant's criminal conduct.  But this case is distinguishable from United States v. Yarber, 915 F.3d 1103 (7th Cir. 2019), upon which Defendant relies.  There, law enforcement obtained a search warrant to search two apartments associated with that defendant, Yarber.  Id. at 1104.  The supporting affidavit to the warrant stated that a confidential source bought cocaine from Yarber on four occasions near the same intersection.  Id.  On each occasion, Yarber drove a white Dodge

Charger, which was registered to his girlfriend.  Id.  Immediately after two of the controlled buys, Yarber drove to his girlfriend's apartment.  Id.  The police also surveilled the apartment on three additional occasions, and all three times they saw the white Dodge Charger parked in front.  Id.  On one occasion, the police saw Yarber exit the Dodge Charger and go inside the apartment.  Id. The affidavit did not state that Yarber lived at the Champaign apartment or that he stayed overnight at the apartment.  Id. at 1105.  Instead, the affidavit listed an apartment in Urbana as Yarber's residence.  Id.  The issuing judge found that the affidavit established probable cause to search the Champaign apartment. Id.

The Seventh Circuit held that probable cause existed to search the Champaign apartment because the search warrant expressly authorized a search for the proceeds of drug sales, Yarber went directly to his girlfriend's apartment after two of the controlled buys, and additional surveillance tied Yarber to his girlfriend's apartment and car.  Id. at 1106.  As a result, it was reasonable for the judge to infer that "an experienced drug dealer might maintain cash proceeds from drug sales within the apartment he visited

immediately after the sales—an apartment rented to his girlfriend and tied to the car he used to conduct his drug sales—rather than on his person or in a car." Id.

Defendant objects to the Report and Recommendation, arguing that Yarber stands for the proposition that going to a residence after selling drugs "does not establish probable cause to search the residence." See d/e 45, p. 3. The Court disagrees with Defendant's interpretation of Yarber. Although Yarber made clear that any place to which a suspected drug dealer travels after a drug sale is not subject to a search, the Yarber Court looked at the totality of the circumstances. 915 F.3d at 1106.

Defendant's reliance on Yarber is misplaced. In this case, the affidavit connected five alleged drug dealings to 1210 N. Bengel Street. Two of these alleged drug dealing meetings involved the Defendant leaving 1210 N. Bengel Street. While the officers did not observe a hand-to-hand transaction occur between Defendant and any individual, three of the meetings involved an unknown black male leaving 1210 N. Bengel Street and conducting hand-to-hand transactions. This surveillance supports a nexus between 1210 N. Bengel Street and illegal drug trafficking. The warrant authorized

the search for illicit drugs and items associated with unlawful drug activity at 1210 N. Bengel Street.  Viewing the surveillance with TFO Lehr's experience and training, and his prior experience with Defendant, based on the totality of the circumstances detailed in the affidavit, it was reasonable for the issuing judge to believe that a search would uncover evidence of drug trafficking at 1210 N. Bengel Street.

Defendant also argues that the affidavit lacked probable cause because it did not state who lived at 1210 N. Bengel Street or owned the residence.  The Yarber Court found that the issuing judge could not rely on the affidavit to draw the inference that evidence of drug dealing was likely to be found where the dealer lived.  See 915 F.3d at 1106.  The supporting affidavit gave no indication that Defendant lived at the residence.  Here, however, 1210 N. Bengel Street was listed as Defendant's address according to the parole list.  Moreover, such statements are not required for an affidavit supporting a search warrant.  Affidavits supporting a search warrant are not required to have direct evidence linking a crime to a particular place.  See Zamudio, 909 F.3d at 175.

### B. In the Alternative, the Good Faith Exception Applies.

Even if the search warrant and the supporting affidavit did not establish probable cause, the good faith exception applies. Magistrate Judge McNaught found that even if the warrant was lacking probable cause, the evidence would still survive under the good faith exception. For the reasons stated below, the Court agrees with Magistrate Judge McNaught's determination.

Evidence seized pursuant to a warrant declared invalid is not subject to the exclusionary rule if the officers who executed the warrant relied in good faith on the issuing judge's finding of probable cause. United States v. Leon, 468 U.S. 897, 920–24 (1984). An officer's decision to obtain a warrant is prima facie evidence that he or she was acting in good faith. United States v. Searcy, 664 F.3d 1119, 1124 (7th Cir. 2011) (citing United States v. Otero, 495 F.3d 393, 398 (7th Cir. 2007)). To rebut the presumption, a defendant must show: (1) that the issuing judge abandoned his or her detached and neutral role, (2) the officers were dishonest or reckless in preparing the affidavit, or (3) the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable. Id.; see also Leon, 468 U.S. at 923.

In this case, TFO Lehr obtained a search warrant.  See d/e 41, Ex. 1.  Therefore, TFO Lehr is presumed to have acted in good faith. Defendant bears the burden of proving one of the exceptions to rebut the presumption in favor of good faith.  Defendant argues that the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable.  See d/e 45, p. 7.  Defendant made no claim that the issuing judge abandoned her detached and neutral role or that the officers were dishonest or reckless in preparing the affidavit.

The Court does not find that the warrant was so lacking in probable cause to render TFO Lehr's belief entirely unreasonable. TFO Lehr had knowledge of Defendant's previous involvement with drug activity.  He also, based on his training and knowledge, as well as surveillance of 1210 N. Bengel Street, had reasonable belief that illicit drug trafficking was occurring at the residence.  The Court further finds that Defendant did not carry his burden in rebutting the presumption that law enforcement acted in good faith.  The evidence seized pursuant to the search warrant is not subject to the exclusionary rule.  See Leon, 468 U.S. at 920–24.

## C. The Officers Had Reasonable Suspicion to Stop Defendant, As Well As Probable Cause to Arrest Defendant.

The Government objects to Judge McNaught's determination that the officers lacked a reasonable articulable suspicion that Defendant had committed or was about to commit a crime.  d/e 46, p. 5.  For the reasons stated below, the Court disagrees with Magistrate Judge McNaught's determination and finds that the officers had reasonable suspicion to stop Defendant, as well as probable cause to arrest Defendant, based on the same information officers used to obtain the search warrant for the residence at Bengel Street.

The Fourth Amendment protects individuals against unreasonable searches and seizures.  U.S. Const. amend IV. However, "an investigatory stop, which constitutes only a limited intrusion into an individual's privacy, is reasonable, and therefore permissible, if the officer making the stop is able to point to specific and articulable facts that give rise to a reasonable suspicion of criminal activity."  United States v. Mays, 819 F.3d 951, 955 (7th Cir. 2016) (quoting Terry v. Ohio, 392 U.S. 1, 21–22 (1968)) (cleaned up).  Reasonable suspicion requires "more than a hunch," but need

not rise to the more demanding standard of probable cause.  Gentry
v. Sevier, 597 F.3d 838, 845 (7th Cir. 2010).  "When determining
whether an officer had reasonable suspicion, courts examine the
totality of the circumstances known to the officer at the time of the
stop, including the experience of the officer and the behavior and
characteristics of the suspect."  Mays, 819 F.3d at 955 (cleaned up).
The evaluation of the circumstances is "based on common-sensical
judgments and inferences about human behavior."  United States v.
Baskin, 401 F.3d 788, 791 (7th Cir. 2005) (quoting Illinois v.
Wardlow, 528 U.S. 119, 125 (2000)).  "A Terry stop based on
reasonable suspicion can ripen into a de facto arrest that must be
based on probable cause if it continues too long or becomes
unreasonably intrusive."  United States v. Bullock, 632 F.3d 1004,
1015 (7th Cir. 2011).

Police may arrest an individual if they have "probable cause to
believe that the individual engaged in criminal conduct," and "an
arrest supported by probable cause is reasonable by its very
nature."  United States v. Burnside, 588 F.3d 511, 517–18 (7th Cir.
2009).  In order for probable cause to exist, "law enforcement
agents must reasonably believe, in light of the facts and

circumstances within their knowledge at the time of the arrest, that
the suspect had committed or was committing an offense." United
States v. Biggs, 491 F.3d 616, 620 (7th Cir. 2007) (quoting Payne v.
Pauley, 337 F.3d 767, 776 (7th Cir. 2003)). Probable cause "is a
fluid concept that relies on the common-sense judgment of the
officers based on the totality of the circumstances." United States
v. Reed, 443 F.3d 600, 603 (7th Cir. 2006).  "In determining
whether suspicious circumstances rise to the level of probable
cause, officers are entitled to draw reasonable inferences based on
their training and experience." Id.

The Government argues that the information in the affidavit
for the search warrant provided reasonable suspicion that
Defendant engaged in illegal activity, as well as probable cause to
arrest Defendant.  d/e 46, p. 5.  The Government opted to focus on
the existence of probable cause, because then the issue of
reasonable suspicion is rendered moot. Id.  The Government
argues that TFO Lehr's training and experience, as well as
surveillance of 1210 N. Bengel Street, provided probable cause for
law enforcement to believe that the Defendant was involved in illicit
drug activity.  The Court agrees that officers had probable cause to

arrest Defendant.  As a result, the Court focuses its analysis on probable cause, not reasonable suspicion.

The information contained in the search warrant also established probable cause to arrest Defendant.  Under the totality of the circumstances, officers had probable cause to stop Defendant in his car.  When the officers stopped Defendant, officers had reasonable belief that Defendant was engaged in drug activity from the Bengel Street residence.  Defendant was the subject of TFO Lehr's surveillance and his association with the Bengel Street residence led to a finding of probable cause for the search warrant. Defendant was recently released from the Federal Bureau of Prisons and was affiliated with a previous narcotics investigation in which Defendant was found in possession of heroin.  TFO Lehr's surveillance of Defendant also revealed that, based on TFO Lehr's experience and training, Defendant engaged in activity consistent with drug trafficking.  Defendant briefly visited a home in which a resident overdosed on heroin.  Defendant's suspicious activity upon leaving the Bengel Street residence on two occasions and the observation of the unknown black male in three hand-to-hand drug transactions (including a finding of heroin during the third

transaction), viewed in light of TFO Lehr's training and experience supported the reasonable inference that Defendant was engaging in drug-dealing activity. At the time of the stop, officers had probable cause that Defendant was and had been engaged in criminal activity. Officers, therefore, could arrest Defendant before the search was underway. See Bullock, 632 F.3d at 1014 n.1 (noting that "a good argument could have been asserted that the officers had probable cause to arrest Bullock for drug distribution even before the stop based on the same information officers used to obtain the search warrant for the residence.").

As a result, evidence obtained as to the search of the Defendant, his vehicle, and statements made by Defendant after he was detained on November 30, 2022, are admissible.

## IV. CONCLUSION

It is, therefore, ORDERED:

**(1)    The Report and Recommendation of United States Magistrate Judge McNaught (d/e 44) is ACCEPTED and ADOPTED in part and REJECTED in part.**

(2)  **Defendant's Objections to the Magistrate Judge's Report and Recommendation (d/e 45) are OVERRULED.**

(3)  **Government's Objections to the Magistrate Judge's Report and Recommendation (d/e 46) are SUSTAINED.**

(4)  **Defendant Johnell Smith's Motion to Suppress (d/e 38) is DENIED.  The Motion to Suppress is denied as to the evidence found at 1210 N. Bengel Street pursuant to the issuance of the search warrant, the detention of the Defendant, the search of his vehicle, and any statements made by Defendant after he was stopped in his car on November 30, 2022.**

**IT IS SO ORDERED.**
**ENTERED:  April 30, 2024.**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**